Mr. Justice Cox
delivered the opinion of the Court:
We have had under consideration an appeal from the Commissioner of Patents in the matter of the application of George F. Green for an invention of a new and. useful method of propelling cars by electricity.
The application was filed on the 19th day of August, 1879. The applicant appears to have been a somewhat illiterate and uninformed man, and undertook to prepare his own specifications and claims, without being equipped for that duty. The consequence was that various amendments were suggested on the part of the Patent Office, and made from time to time in his claims and drawings; so the claims as they stand at present are in the following form:
“ 1. The combination substantially as set forth, of a railway track, one or more stationary means of electric supply, electrical *238 conductors extending from said means of supply along the lines of said track, and consisting wholly or in part of the rails thereof, vehicles moving along said track, electric dynamic motors whose coils are constantly excited so long as the poles of said motor are in circuit with the means of electric supply, fixed upon said vehicles for imparting motion thereto, and wheels supporting said vehicles upon the track and also serving to maintain continuous electrical connection between said means of electrical supply and motors, substantially as described.
“2. The combination substantially as set forth, of a railway track, one or more stationary electric batteries, electrical con-' ductors extending from said batteries along the line of said track and consisting wholly or in part of the rails thereof, vehicles, moving along said track, electric dynamic motors whose coils are constantly excited, so long as the poles of said motors are in circuit with the electric batteries fixed upon said vehicles for imparting motion thereto, and wheels supporting said vehicles upon the track, and also serving to maintain continuous electrical connection between said batteries and motors, substantially as described.
‘‘3. The combination, substantially as set forth, of a railway track, one or more stationary means of electrical supply, electrical conductors, extending from said means of electrical supply along the lines of said track and consisting wholly or in part of the rails thereof, vehicles movable along said track, electric djmamic motors fixed upon said vehicles for imparting motion thereto, and wheels supporting said vehicles upon the track, and also serving to .maintain electrical connection between said means of electrical supply and said motors, substantially as described.
“4. The combination of a railway track, one or more stationary means of. electrical supply, electrical conductors extending along the lines of said track and consisting wholly or in part of the rails thereof, vehicles moving along said track, rotating electric dynamic motors fixed upon said vehicles for imparting motion thereto, wheels supporting said *239 vehicles upon the track and also serving to maintain continuous electrical connection between said means of electric supply and said rotating motors, substantially as described.
“5. The combination, substantially as set forth, of a railway track, one or more stationary sources of electric energy, electrical conductors extending from-said source or sources of electric energies along the line of said track, vehicles movable along said track, rotating electric motors fixed upon said vehicles for imparting motion thereto, and suitable contact devices serving to maintain continuous electrical connection between said motors and the conductors extending from said stationary source or'sources of electric energy, substantially as described.”
The fifth claim is a little more comprehensive than the others, but inasmuch as we do not think it is important, we will not waste any time upon it.
It is true that when the application was first filed, the only claim was for a track, “the track being used as a cable to connect the engines on the cars with the electric supply at the end of the track or at different stations along the track, as set forth in the foregoing specification.” But the specification shows a combination including the identical elements above described. The Patent Office has laid no stress upon the meagreness of the original claim, but the application has been rejected' on several grounds; first, because of certain other unused patents of a prior date, which are supposed to have anticipated this invention. The first one is known a& the Pinkus patent, dated in 1840. Now, in order to judge of the difference between that and the present invention, it is proper to ascertain what the elements are in the combination for which the patent is sought. The c-laim is, first, a railroad track; next, a source of electric supply; next, conductors extending from the sources of supply along the track and consisting wholly or in part of the rails of the track; next, a wagon or vehicle moving on the track; next, wheels supporting the wagon or vehicles, and also serving as conductors to collect the electric current; and, lastly, an electric engine or motor fixed on the vehicle, through which the electric current *240 was to proceed and by the operation of which the movement of the vehicle is effected. There are two differences between the Pinkus patent and the invention under consideration. One is, that in the Pinkus patent the rails are not used as conductors for the electric current; the other is, that the wheels of the cars are not used for the electric current to be transmitted from the conductors to the motor. This, we think, is a sufficient answer to the reference to the Pinkus patent. This much seems to be admitted in the decision of the Commissioner of Patents,who says: 'If the Pinkus patent represented the entire prior art, there would be doubt whether said claims might not contain patentable novelty. In view of the fact, however, that the Dugmore and Millward patent exhibits the feature of transmitting the current along the rails and through the wheels, I think the examiners in chief should be sustained in holding that the references are anticipatory. ’ ’ The Commissioner thinks that the examiners in chief should be sustained; that the references are anticipatory. In other words, the position seems to be taken that distinct elements may be taken from different combinations in order to make up a new combination that never before existed, as 'an anticipation of that which the applicant claims. We do not recognize any such right as that. The only ground upon which that is claimed, perhaps, is for the purpose of ascertaining the prior state of the art. The element which is said to supply what is wanted in the Pinkus patent is an extra pair of rails described in the Dugmore and Millward patent. In other words, it seems to be said that while the Pinkus patent does not refer to the rails, it does provide for a conductor. According to the then state of the art, rails were then known as a conductor, and were the mechanical equivalent for the element in the Pinkus combination. We do not think this is so, for several reasons. The Dugmore and Millward patent seems to be an invention for signalling from one train to the other, and provides for two distinct bars, rods or rails laid down in the middle of the main track, and for two independent wheels rolling upon these bars or rails, situated near the center of the car. The electric current was to be started from one train .and carried along over *241 one of these rails to the other train and then to sound the signal and the other rail completed the circuit. The whole object of that was that one train might signal another. The distinct idea of propelling the cars did not enter into the invention at all. It would be sufficient to say, even if it did, that the dispensing with all those expenses of two extra rails and wheels and substituting the traction wheels and traveling rails would be of itself a patentable difference. It has never been suggested before, and when we consider that the present claim relates entirely to the propulsion of the cars, we do not think the state of the art justified any reference to that feature as anticipating the claim of Green, which involves the operation of the traveling rails and traction wheels for the conduction and collection of the electric current. The only other thing referred to as anticipating the invention is an article in the Mechanics’ Magazine, Volume 43, which is nothing more than a suggestion of what might possibly be accomplished in the future. The article is in the following terms : “ Now suppose we have a railway io miles long, and that at one terminal house there is placed an enormous stationary galvanic battery; might we not make the rails themselves the conducting lines of the'battery; and the wheels being so arranged as to break the connection where required, a rotating magnet might revolve by the electro-mag. netismthus communicated. The first thought which is immediately suggested is, how much of the galvanic current would escape by the earth, across the rails ? Now, surely if half the trouble that has been expended on the value of the exhausted tubes of atmospheric railways were to be employed here, we should soon have some method of cheap insulation invented. Imbedding in wood prevents a great deal of this loss, and this difficulty seems to be the only 'one. Of course the axles of the wheels of the train must be of some non-conducting substance; they might, like the wheel tires, be of .wood. Perhaps some fertile brain may take hint and bring forth, soon the electric railway.”
The Commissioner himself says of this, “ This may be regarded as a mere suggestion. It expresses a conception of the invention, and perhaps nothing more. It seems to be defective *242 in that it does not place the invention in the possession of the public as fully as if the art or instrument itself had been practically and publicly employed. ’ ’
We need not suggest any further comment upon that,, as the suggestion made there was never carried into a test. That may be said also of both the other patents. They do not appear to have been reduced to practice, whereas Green did reduce his to practice. He constructed a .railway 200 feet in length and a car and Used a battery and did propel his car over this track back and forth so as to prove his invention. We therefore think, on this reference at least, the Commissioner of Patents is wrong in holding that this application should be rejected.
The next ground is that the applicant’s claim in their present form contain certain new matter, and are a departure from the claim as originally filed. As originally filed, one of the elements claimed was an engine on the cars with the electric supply at the end of the track or at different stations along the track, and the present claims specify the form of that engine. Two of the claims specify the engine or motor, or, as it is called, the “electric dynamic motors, whose coils are constantly excited so long as the poles of said motor are in circuit with the means of electric supply fixed upon said vehicle for imparting motion thereto,” and in the two other claims the motor is called, an electric dynamic motor. Now, they say, in the office, that this is a departure from the original claim, being new matter, and if he is entitled to a patent at all he must make a new application, and of course be subjected to all intervening priorities; his first claim having been filed back in 1879, twelve years ago. There can hardly be any doubt that the term “engine, ’ ’ in the connection in which he used it in his first application, and as described in the first application, meant an electric engine. It is the same thing as an electric motor. I say that-, because he himself had the patent for this very electric motor described in these other claims, and when he spoke of an engine he must be understood to have had reference to an electric motor to be attached to the cars. In view of the state of the art, it had no other *243 meaning than that; and, if so, that would embrace any form of motor. Strangely enough, the examiner himself, in the letter of June 25, 1889, says: “There is no objection to applicant’s stating in the specifications that he may use the motor described in the patent, but he cannot claim that motor specifically in this case and cannot have any claim which rests wholly for its novelty on the specific construction of a motor which was not shown br described in the orignal specification.” Now, if he can state in his present specification, under this claim of electric engine, that , he can use o? will use this motor, it must be that a general claim of an electric motor covers this as well as other motors. If so, we are at a loss to see why he cannot restrict his claim. If he can claim a motor generally, a fortiori he can claim as one of the elements in this combination, a motor whose coils are constantly excited so long as the poles of said motor are in circuit with the means of electric supply fixed upon said vehicle for imparting motion thereto. If, at 'the time he claimed it, it had appeared that somebody else had invented a combination covering motors generally, it might be ground for the position taken in the office, that he could not avoid interference by limiting his claim to a particular form; but, so far as we are advised, in specifying the motor, he interfered with nobody but himself, and we have been unable to see that this, as new matter, should deprive him of the benefit of his original application. Therefore, we think there was an error in the ruling of the Commissioner.
One other point should be referred to. The Commissioner says: “In any event, the history of the interference proceedings to which Green was a party, and from which this application was excluded because the source of electrical supply was a battery, and not a dynamo, would require the case to be amended so as to be limited to a battery-instead of means of electrical supply.” One of the elements in the combination was, as he first filed his claim, “I charged my track or track-rails with electricity, produced by any of the known methods of producing electricity,” and he illustrates his invention further by speaking of a battery, but he claimed that his orig *244 inal invention included any known means of supply, electric-dynamic, as well as battery. And the evidence before the Commissioner tended to show that he desired to purchase a dynamo, but was prevented by lack of means. The fact is, I believe, that the battery would not furnish a sufficient supply. Now, the Commissioner says, because he did not specify a dynamo in the first instance, although he claimed any source of supply by any of the known methods of producing electricity, he is limited to a battery. We do not think that is so, because, as I said before, in His original specification, he states, “I charge my track or track-rails with electricity produced by any of the known methods of producing electricity.”
The statute limits us to a decision upon reasons of the appeal. They are, in other words, assignments of error; and the reasons of appeal assigned by the claimant relating entirely to these interferences and to the decision that the specification of a form of motor was a departure from the original application, and we are limited to a decision on these questions. But one other point I overlooked. The fifth claim does appear to have been anticipated by previous patents. That is a claim generally for current brought to the car by a conductor, without describing it, and suitable electric contact devices for maintaining the connection between motors and conductors, etc. There have been a number of devices for collecting electricity not confined to wheels, as, for example, in the Pinkus patent, and we throw that claim out of the case.
We shall simply decide that the decision of the Commissioner of Patents as to the matters set forth in the reasons of appeal was error, and that as far as the decision applies to the first four claims of the application the decision be reversed.